UNITED STATES DISTRICT COURT **CV 07 4265**
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

------------------------------------------------------------X
GREAT NECK SAW MANUFACTURERS, INC,
a New York Corporation

★   OCT 1 2 2007   ★

                  Plaintiff,      : Civil Action No.:

LONG ISLAND OFFICE

        -against-                  :
                                         :

COMPLAINT FOR
INFRINGEMENT AND
DEMAND FOR JURY TRIAL

METRO, CREMO & SONS, INC.
a/k/a METRO TOOLS, an Indiana Corporation,

**PLATT, J**

                 Defendant.    :
------------------------------------------------------------X

**BOYLE, M.**

## I. INTRODUCTION

Plaintiff, Great Neck Saw Manufacturers, Inc. ("Great Neck") for its Complaint against

Metro, Cremo & Sons, Inc. a/k/a Metro Tools ("Metro") as follows:

## II. THE PARTIES

1.    Plaintiff, Great Neck is a corporation organized under the laws of the State of

New York with its principal place of business at 165 East Second Street, Mineola,

New York 11501.

1

2.    Upon information and belief, Defendant, Metro is a corporation organized under the laws of the Commonwealth of Pennsylvania with a place of business at 6499 Carlisle Pike, Mechanicsburg, PA 17050.  Metro is engaged in the manufacture, supply, sale and distribution and/or importation of utility knives (a photocopy of which are attached as Exhibit A) and has committed tortious acts, including without limitation, patent infringement, trademark infringement, unfair competition, trade dress infringement, false designation of origin, unprivileged imitation and passing off as more fully set for herein, within the Eastern District of New York and is subject to the jurisdiction of this Court.

### III.  JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 28 USC 1331 and 1338.

4.    Venue in this action is properly laid in this judicial district pursuant to 28 USC 1391(b), 1391(c) and 1400.

5.    The Court has personal jurisdiction over Metro  because it, *inter alia*, transacts business in New York, contracts to supply goods within New York, engages in a persistent course of conduct in New York, and expects, or should expect, its acts to have legal consequences in New York.

### IV.  NATURE OF THE CASE

6.    This is an action seeking injunctive and monetary relief for patent infringement in violation of the Patent Act of the United States, pursuant to 35 USC 281; trademark infringement pursuant to 15 USC 1121; trade dress infringement pursuant to 15 USC 1125(a), false designation of origin pursuant to 15 USC 1125(a); unprivileged imitation pursuant to 15 USC 1125(a); and unfair

2

competition pursuant to 15 USC 1125(a); passing off pursuant to 15 USC 1125(a) and the statutes and common laws of the State of New York.

## V.  FIRST CAUSE OF ACTION
## PATENT INFRINGEMENT - U.S. PATENT NO. 7,040,022

7.     On May 9, 2006, United States Patent and Trademark Office duly and legally issued United States Patent No. 7,040,022 ("'022 patent"), entitled "Utility Knife", in the name of Qiu Jian Ping. By virtue of a  proper assignment Great Neck owns all right, title, and interest in this patent, including the right to sue and recover for infringement thereof.  A copy of said '022 patent is attached hereto as Exhibit B.

8.     Metro has notice of Great Neck's rights in the '022 patent.

9.     The '022 patent is valid and enforceable.

10.     On information and belief, Metro has infringed the '022 patent by making,  using, selling, importing and/or offering to sell utility knives (Exhibit A) that infringe the '022 patent.

11.     Metro's acts of infringement have damaged Great Neck in an amount to be proven at trial.

12.     Metro's acts of infringement have cause irreparable harm to Great Neck and will continue to cause irreparable harm unless enjoined by this Court.

13.     Upon information and belief, Metro's infringement has been willful.

3

## VI.  SECOND CAUSE OF ACTION
## PATENT INFRINGEMENT - U.S. PATENT NO. D495,939

14.   On September 14, 2004, United States Patent No. D495,939 ('939 patent), for an

invention entitled "Utility Knife" was duly and legally issued in the name of Qiu

Jian Ping.  By virtue of a  proper assignment, Great Neck acquired and duly owns

all right, title, and interest in this patent, including the right to sue and recover for

infringement thereof.  A copy of said '939 patent is attached hereto as Exhibit <u>C</u>.

15.   Metro  has notice of Great Neck's rights in the '939 patent.

16.   The '939 patent is valid and enforceable.

17.   Upon information and belief, Metro  has infringed the '939 patent by

manufacturing, using, offering to sell, selling, distributing, and/or importing utility

knives (Exhibit <u>A</u>) embodying one or more of the inventions claimed therein

within the United States, or by supplying infringing products to others to use,

thereby inducing and/or contributing to the infringement of the '939 patent, and

will continue to do so unless enjoined by this Court.

18.   Upon information and belief, by reason of Metro 's acts of infringement, Great

Neck has suffered and is suffering damages, including impairment of the value of

the '939 patent in an amount yet to be determined.

19.   Upon information and belief, Metro 's acts of infringement are causing irreparable

harm to Great Neck and will continue to cause irreparable harm unless enjoined

by this Court.

4

20.     Upon information and belief, Metro's acts have been committed willfully and with

knowledge of Great Neck's patent rights and have resulted and are currently

resulting in substantial unjust profits and unjust enrichment on the part of Metro

in an amount yet to be determined.

## VII.  THIRD CAUSE OF ACTION
### PATENT INFRINGEMENT - U.S. PATENT NO. D501,782

21.     On February 15, 2005, United States Patent No. D501,782 ('782 patent), for an

invention entitled "Utility Knife" was duly and legally issued in the name of Qiu

Jian Ping.  By virtue of a  proper assignment, Great Neck acquired and duly owns

all right, title, and interest in this patent, including the right to sue and recover for

infringement thereof.  A copy of said '782 patent is attached hereto as Exhibit D̲.

22.     Metro  has notice of Great Neck's rights in the '782 patent.

23.     The '782 patent is valid and enforceable.

24.     Upon information and belief, Metro has infringed the '782 patent by

manufacturing, using, offering to sell, selling, distributing, and/or importing utility

knives (Exhibit A̲) embodying one or more of the inventions claimed therein

within the United States, or by supplying infringing products to others to use,

thereby inducing and/or contributing to the infringement of the '782 patent, and

will continue to do so unless enjoined by this Court.

25.     Upon information and belief, by reason of Metro's acts of infringement, Great

Neck has suffered and is suffering damages, including impairment of the value of

the '782 patent in an amount yet to be determined.

26.   Upon information and belief, Metro's acts have been committed willfully and with knowledge of Great Neck's patent rights and have resulted and are currently resulting in substantial unjust profits and unjust enrichment on the part of Metro in an amount yet to be determined.

## VIII.   FOURTH CAUSE OF ACTION
### PATENT INFRINGEMENT - U.S. PATENT NO. D510,250

27.   On October 4, 2005, United States Patent No. D510,250 ('250 patent), for an invention entitled "Utility Knife" was duly and legally issued in the name of Qiu Jian Ping.  By virtue of a  proper assignment, Great Neck acquired and duly owns all right, title, and interest in this patent, including the right to sue and recover for infringement thereof.  A copy of said '250 patent is attached hereto as Exhibit E.

28.   Metro has notice of Great Neck's rights in the '250 patent.

29.   The '250 patent is valid and enforceable.

30.   Upon information and belief, Metro has infringed the '250 patent by manufacturing, using, offering to sell, selling, distributing, or importing utility knives (Exhibit A) embodying one or more of the inventions claimed therein within the United States, or by supplying infringing products to others to use, thereby inducing and/or contributing to the infringement of the '250 patent, and will continue to do so unless enjoined by this Court.

31.   Upon information and belief, by reason of Metro's acts of infringement, Great Neck has suffered and is suffering damages, including impairment of the value of the '250 patent in an amount yet to be determined.

32. Upon information and belief, Metro 's acts of infringement are causing irreparable harm to Great Neck and will continue to cause irreparable harm unless enjoined by this Court.

33. Upon information and belief, Metro's acts have been committed willfully and with knowledge of Great Neck's patent rights and have resulted and are currently resulting in substantial unjust profits and unjust enrichment on the part of Metro in an amount yet to be determined.

### VIIII.  FIFTH CAUSE OF ACTION

### INJUNCTIVE AND MONETARY RELIEF FOR TRADE DRESS INFRINGEMENT PURSUANT TO 15 USC 1125(a)

34. Great Neck repeats and incorporates herein, the averments of paragraphs 1-6, inclusively.

35. This claim is for trade dress infringement, and arises under 15 USC 1125(a) and the statutes and common laws of the State of New York.  This cause of action is separate and independent of the First, Second, Third and Fourth Causes of Action but is between the same parties and based on the same operative facts.

36. Great Neck's trade dress consists of the non-functional features and appearance of its utility knives comprising the shapes, size and appearance of the various parts of the utility knives.  As photocopy of one of Great Neck's utility knives is attached hereto as Exhibit F.

37. Great Neck has advertised, marketed, offered for sale and sold its utility knives in various sizes with its inherently distinctive trade dress.

38.   Great Neck's trade dress is inherently distinctive, distinguishing its utility knives from other utility knives and identifying Great Neck as a sole source of its utility knives.

39.   As a result of Great Neck's long use of its trade dress in connection with its advertising, marketing, promoting, offering for sale and sale of its utility knives, its trade dress has acquired secondary meaning identifying Great Neck as the sole source of its utility knives and distinguishing them from other similar products.

40.   Great Neck's promotion, marketing, offer for sale and sale in the United States of its utility knives in connection with its trade dress has been so extensive that distributors, retailer and consumers have come to recognize its products as coming from a single source --- Great Neck.

41.   As a direct result of this usage, Great Neck's trade dress is well known and represents a business and good will of significant and inestimable value to Great Neck

42.   After the introduction of Great Neck's utility knives, Metro introduced and distributed competing utility knife which Metro  has marketed, sold, and/or distributed.

43.   Metro's utility knives are substantially similar to Great Neck's utility knife including similarly in shape, sized parts and appearance.  The overall scheme of Metro 's trade dress is substantially identical to Great Neck's trade dress.

44.  Metro's use of Great Neck's trade dress is likely to cause confusion, mistake or deception among purchasers and consumers as to the source of the Metro 's goods. Purchasers and consumers are likely to purchase and/or use of Metro 's utility knives bearing substantially similar trade dress as Great Neck's believing they are Great Neck's goods or that they are associated and affiliated with Great Neck thereby resulting in loss of sales and damages to Great Neck.

45.  Metro's wrongful use of Great Neck's trade dress constitutes infringement under 15 USC 1125(a) and the statutes and common laws of the State of New York.

46.  Upon information and belief, Metro's infringement of Great Neck's trade dress is willful.

47.  As a result of Metro's conduct, Great Neck has, and continues to, suffer irreparable harm and has been damaged in an amount to be proven at trial.

48.  Great Neck has no adequate remedy at law.

## X.  SIXTH CAUSE OF ACTION
## INJUNCTIVE AND MONETARY RELIEF FOR FALSE
## DESIGNATION OF ORIGIN PURSUANT TO 15 USC 1125(a)

49.  Great Neck realleges and incorporates herein, the averments set forth in paragraphs 1-6 and 34-48, inclusively.

50.  This claim is for false designation of origin pursuant to 15 USC 1125(a) and the statutes and common law of the State of New York.  This cause of action is separate and independent of the causes set forth in the First, Second, Third, Fourth and Fifth Causes of Action, but is between the same parties and based on the same operative facts.

51. Metro's use of Great Neck's trade dress constitutes false designation of origin that is likely to deceive customers, prospective customers and consumers of Metro 's utility knife into believing that they emanate from Great Neck as their source of origin, thus hampering efforts by Great Neck to protect and insure its outstanding reputation for high quality, and resulting in the loss of sales and Great Neck's reputation for which Great Neck has made substantial expenditures and efforts to promote its products and build up.

52. Upon information and belief, Metro's conduct is willful.

53. As a result of Metro's conduct, Great Neck has and continues to suffer irreparable harm, and has been damaged in an amount to be proven at trial.

54. Great Neck has no adequate remedy at law.

## XI.  SEVENTH CAUSE OF ACTION
## INJUNCTIVE AND MONETARY RELIEF FOR UNFAIR COMPETITION
## PURSUANT TO 15 U.S.C. §1125(a) AND THE COMMON LAW OF NEW YORK

55. Great Neck realleges and incorporates herein, the averments of paragraphs 1-6 and 34-54, inclusively.

56. This claim is for unfair competition pursuant to 15 U.S.C. §1125(a) and the statutes and common law of the State of New York.  This cause of action is separate and independent of the causes set forth in the First, Second, Third, Fourth, Fifth and Sixth Causes of Action, but is between the same parties and based on the same operative facts.

57.      Upon information and belief, Metro's promotion, advertising, marketing, sale and distribution of its utility knives using Great Neck's trade dress is causing actual confusion as to the source, origin or sponsorship of defendant's utility knives.

58.      Upon information and belief, Metro's promotion, advertising, marketing, sale and distribution of its utility knives using Great Neck's trade dress is a bad faith misappropriation of the labor and expenditures of Great Neck to its own commercial advantage, which is likely to cause confusion or to deceive purchases and consumers as to the origin of Metro's utility knives.

59.      Metro's willful and wrongful conduct has proximately caused and will continue to cause Great Neck substantial injury, including loss of customers and profits, dilution of its goodwill, confusion of existing and potential customers, injury to reputation and diminution of the value of its trade dress and products.

60.      Metro's promotion, advertising, marketing, sale and distribution of its utility knives using Great Neck's trade dress without its permission, consent or authorization constitutes unlawful, unfair, or fraudulent business practices in violation of 15 USC 1125(a) and the statutes and common law of the State of New York.

61.      Upon information and belief, Metro's conduct is willful.

62.      As a result of Metro's conduct it is likely that the public is and will continue to be confused, misled or deceived as to the source, origin or sponsorship of its products, and Great Neck is now and will continue to suffer irreparable injury and damages in an amount to be proven at trial.

63.      Great Neck has no adequate remedy at law.

## XII.  EIGHTH CAUSE OF ACTION

### INJUNCTIVE AND MONETARY RELIEF FOR UNPRIVILEGED IMITATION PURSUANT TO 15 USC 1125(a)

64.     Great Neck realleges and incorporates herein, the averments of paragraph 1-6 and 34-63, inclusively.

65.     This claim is for unprivileged imitation

66.      and arises under 15 USC 1125(a) and the statutes and common law of the State of New York.  This cause of action is separate and independent of the causes set forth in the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action but is between the same parties and based on the same operative facts.

67.     Metro's use of any part or all of Great Neck's trade dress is likely to cause confusion, mistake and deception in the minds of purchasers and consumers of the parties' flashlights.

68.     Metro's wrongful conduct constitutes unprivileged imitation of Great Neck's trade dress.

69.     Metro's unprivileged imitation of Great Neck's trade dress and its associated good will of Great Neck through its misuse of Great Neck's designs and shapes, the same or confusingly similar appearance is an infringement of, and trades upon, Great Neck's favorable reputation and proprietary rights under 15 USC 1125(a), and the statutes and common laws of the State of New York.

70.     Upon information and belief, Metro's conduct is willful.

71.     As a result of Metro's wrongful conduct, Great Neck has and continues to suffer irreparable harm and has been damaged in an amount to be proven at trial.

72.     Great Neck has no adequate remedy at law.

## XIII.  NINTH CAUSE OF ACTION

### INJUNCTIVE AND MONETARY RELIEF FOR PASSING OFF
### PURSUANT TO 15 U.S.C. §1125(a) AND NEW YORK COMMON LAW

73.     Great Neck realleges and incorporates herein, the averments of paragraphs 1-6 and 34-71 inclusively.

74.     This claim is for passing off pursuant to 15 USC 1125(a) and the statutes and common law of the State of New York.  This cause of action is separate and independent of the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action, but is between the same parties and based on the same operative facts.

75.     Great Neck is actively engaged in exploiting and promoting its trade dress in interstate commerce throughout the United States.

76.     Upon information and belief, Metro  passes off its utility knives as those of Great Neck and are deliberately attempting to create the impression that is products originate or are associated, sponsored or connected with Great Neck's products.

77.     Upon information and belief, Metro's products do not have the same attributes as Great Neck's products.

78.     Great Neck cannot police or control the quality of Metro's utility knives and such passing off harms Great Neck's consumer goodwill and reputation and otherwise causes harm to Great Neck.

79.     Metro's conduct violates 15 USC 1125 and New York common law prohibiting such passing off.

13

80. Upon information and belief, Metro's conduct is willful, and has proximately caused and will continue to cause Great Neck irreparable injury and damage in an amount to be proven at trial.

81. Great Neck has no adequate remedy at law.

## V.    TENTH CAUSE OF ACTION
## PATENT INFRINGEMENT - U.S. PATENT NO. D526,877

82. On August 22, 2006, United States Patent No. D526,877 ('877 patent), for an invention entitled "Folding Utility Knife" was duly and legally issued in the name of Qiu Jian Ping.

83. By virtue of proper assignment Great Neck acquired and duly owns all right, title, and interest in this patent, including the right to sue and recover for infringement thereof.  A copy of said '877 patent is attached hereto as Exhibit G.

84. Metro has notice of Great Neck's rights in the '877 patent.

85. The '877 patent is valid and enforceable.

86. Upon information and belief, Metro has infringed the '877 patent by manufacturing, using, offering to sell, selling, distributing and/or importing utility knives (Exhibit A) embodying one or more of the inventions claimed therein within the United States, or by supplying infringing products to others to use, thereby inducing and/or contributing to the infringement of the '877 patent, and will continue to do so unless enjoined by this Court.

87. Upon information and belief, by reason of Metro's acts of infringement, Great Neck has suffered and is suffering damages, including impairment of the value of the '877 patent, in an amount yet to be determined.

88. Upon information and belief, Metro's acts of infringement are causing irreparable harm to Great Neck and will continue to cause irreparable harm unless by this Court.

89. Upon information and belief, Metro's acts have been committed willfully and with knowledge of Great Neck's patent rights and have resulted and are currently resulting in substantial unjust profits and unjust enrichment on the part of defendant in an amount yet to be determined.

### VI.    ELEVENTH CAUSE OF ACTION
### PATENT INFRINGEMENT - U.S. PATENT NO. D528,895

90. On September 26, 2006, United States Patent No. D528,895 ('895 patent), for an invention entitled "Utility Knife" was duly and legally issued in the name of Qiu Jian Ping.

91. By virtue of a proper assignment Great Neck acquired and duly owns all right, title, and interest in this patent, including the right to sue and recover for infringement thereof.  A copy of said '895 patent is attached hereto as Exhibit H.

92. Star Asia has notice of Great Neck's rights in the '895 patent.

93. The '895 patent is valid and enforceable.

94. Upon information and belief, Metro has infringed the '895 patent by manufacturing, using offering to sell, selling, distributing or importing utility knives (Exhibit A) embodying one or more of the inventions claims therein within the United States, or by supplying infringing products to others to use, thereby inducing and/or contributing to the infringement of the '895 patent, and will continue to do so unless enjoined by this Court.

15

95.    Upon information and belief, by reason of Metro's acts of infringement, Great
Neck has suffered and is suffering damages, including impairment of the value of
the '895 patent, in an amount yet to be determined.

96.    Upon information and belief, Metro acts of infringement are causing irreparable
harm to Great Neck and will continue to cause irreparable harm unless enjoined
by this Court.

97.    Upon information and belief, Metro's acts have been committed willfully and
with knowledge of Great Neck's patent rights and have resulted and are currently
resulting in substantial unjust profits and unjust enrichment on the part of
defendant in an amount yet to be determined.

## XVIII. TWELFTH CAUSE OF ACTION
## PATENT INFRINGEMENT - U.S. PATENT NO. D543,822

98.    On June 5, 2007, United States Patent No. D543,822 ('822), for an invention
entitled "Folding Utility Knife" was duly and legally issued in the name of Qiu
Jian Ping.

99.    By virtue of proper assignment Great Neck acquired and duly owns all right, title
and interest in this patent, including the right to sue and recover for infringement
thereof.  A copy of said '822 patent is attached hereto as Exhibit I.

100.   Metro has notice of Great Neck's rights in the '822 patent.

101.   The '822 patent is valid and enforceable.

102.   Upon information and belief, Metro has infringed the '822 patent by
manufacturing, using, offering to sell, selling, distributing and importing utility
knives (Exhibit A) embodying one or more of the inventions claimed therein
within the United States, or by supplying infringing products to others to use,

16

thereby inducing and/or contributing to the infringement of the '822 patent, and will continue to do so unless enjoined by this Court.

103.   Upon information and belief, by reason of Metro's acts of infringement, Great Neck has suffered and is suffering damages, including impairment of the value of the '822 patent, in an amount yet to be determined.

104.   Upon information and belief, Metro's acts of infringement are causing irreparable harm to Great Neck and will continue to cause irreparable harm unless enjoined by this Court.

105.   Upon information and belief, Metro's acts have been committed willfully and with knowledge of Great Neck's patent rights and have resulted and are currently resulting in substantial unjust profits and unjust enrichment on the part of defendant in an amount yet to be determined.

## TWELFTH CAUSE OF ACTION
## FEDERAL TRADEMARK INFRINGEMENT

106.   This claim is for federal trademark registration infringement pursuant to 15 U.S.C. Sections 1121. This cause of action is separate and independent of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action, but is between the same parties and based on the same operative facts.

107.   Since prior to the acts by Metro complained of herein, Great Neck, at least as early as November 1, 2003, has continuously advertised, marketed, sold and distributed in interstate and international commerce, high-quality utility knives under the distinctive trademark LOCK BACK.

17

108.    Great Neck sought and obtained United States Trademark Registration No. 2,980,151 for the trademark LOCK BACK and is the owner of said trademark registration.  A copy of said Trademark Registration No. 2,980,151 is attached hereto as Exhibit J.  At all relevant times, Great Neck has consistently and continuously displayed the registration symbol ® or its equivalent with the said trademark LOCK BACK since it became registered.

109.    Great Neck has extensively marketed and advertised the utility knives with the trademark LOCK BACK so that the public associates said trademark with Great Neck.  Great Neck displays its products and the trademark LOCK BACK in its advertising and promotional presentations.  At shows, plaintiff prominently displays its LOCK BACK trademark, in conjunction with its utility knives.  In addition, the LOCK BACK trademark appears on packaging and containers for its utility knives.  To date, Great Neck has spent thousands of dollars in advertising and promoting its utility knives under said trademark and has had millions of dollars of sales of its utility knives under said trademark.

110.    Metro has used Great Neck's trademark LOCK BACK in the sale, advertisement, offer for sale and/or distribution of utility knives (Exhibit A) in interstate commerce.

111.    Metro's manufacture, advertisement, sale, offer for sale and/or distribution of utility knives in that manner is likely to cause confusion and has caused confusion, mistake, or deception that Metro's utility knives are made by, sponsored by, or affiliated with Great Neck.

18

112.    On information and belief, Metro has knowledge of Great Neck's trademark LOCK BACK utility knife and the considerable commercial success it has achieved.

113.    Metro's acts constitute trademark infringement of Great Neck's United States Trademark Registration No. 2,980,151 for the trademark LOCK BACK in violation 15 USC 1051, et seq., to the substantial and irreparable injury of the public and of Great Neck's business reputation and goodwill.

114.    On information and belief, as a result of such acts,  Metro has been and will continue to be unjustly enriched by profits which Metro has made in connection with its marketing and sale of utility knives bearing Great Neck's trademark.

115.    On information and belief, as a result of the acts of Metro, Great Neck has suffered and will continue to suffer monetary damages in an amount not yet determined.  Additionally, Great Neck has incurred and will incur expenses for costs and attorneys fees.

116.    On information and belief, Metro's acts were in willful and conscious disregard for Great Neck's rights to the LOCK BACK trademark, and the resulting damage to Great Neck's goodwill and reputation is such as to warrant the trebling of damages in order to provide just compensation.

117.    Unless Metro is restrained and enjoined by this Court, Metro's actions will continue to cause irreparable harm and injury to Great Neck.

### THIRTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION PURSUANT TO
### 15 USC 1125(a) AND THE COMMON LAW OF NEW YORK

118.  This claim is for unfair competition pursuant to 15 USC 1125(a) and the statutes and common law of the State of New York.  This cause of action is separate and independent of the causes set forth in the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Causes of Action, but is between the same parties and based on the same operative facts.

119.  Upon information and belief, Metro's promotion, advertising, marketing, sale and/or distribution of its utility knives using Great Neck's trademark LOCK BACK is causing actual confusion as to the source, origin or sponsorship of Metro's utility knives.

120.  Upon information and belief, Metro's promotion, advertising, marketing, sale and/or distribution of its utility knives using Great Neck's trademark LOCK BACK is a bad faith misappropriation of the labor and expenditures of Great Neck to its own commercial advantage, which is likely to cause confusion or to deceive purchases and consumers as to the origin of Metro's utility knives.

121.  Metro's willful and wrongful conduct has proximately caused and will continue to cause Great Neck substantial injury, including loss of customers and profits, dilution of its goodwill, confusion of existing and potential customers, injury to reputation and diminution of the value of its trademark LOCK BACK and products.

122. Metro's promotion, advertising, marketing, sale and/or distribution of its utility knives using Great Neck's trademark LOCK BACK without its permission, consent or authorization constitutes unlawful, unfair, or fraudulent business practices in violation of 15 USC 1125(a) and the statutes and common law of the State of New York.

123. Upon information and belief, Metro's conduct is willful.

124. As a result of Metro's conduct it is likely that the public is and will continue to be confused, misled or deceived as to the source, origin or sponsorship of its products, and Great Neck is now and will continue to suffer irreparable injury and damages in an amount to be proven at trial.

125. Great Neck has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. a finding that Metro be held to have infringed Great Neck's patents; trade dress; and trademark and to have competed unfairly with Great Neck.

2. a finding that there is a substantial likelihood that Metro will continue to infringe Great Neck's patents, trade dress and trademark and to compete unfairly with Great Neck unless enjoined from doing so;

3. a preliminary and permanent injunction enjoining Metro, its agents, servants, employees, successors and assigns and all others in concert and privity with Metro from infringing Great Neck's patents, trade dress and trademark or from injuring Great Neck's business reputation, from unfairly competing with Great Neck and from engaging in unfair and deceptive trade practices and from diluting its trade business.

4.     that Metro be required to recall its infringing utility knives from all distributors, retailers and customers to which they distributed such products;

5.     that Metro be required to account to Great Neck for their profits, the actual damages suffered by Great Neck as a result of Metro's acts, together with interest and costs; and that the award be made to Great Neck pursuant to 15 U.S.C. §1117, and the common law, in an amount to be proven at trial.

6.     that such damages be trebled because Metro had notice of Great Neck's patent, trade dress and trademark rights.

7.     that Great Neck have and recover attorneys' fees, together with the costs of this suit;

8.     that Metro be compelled to surrender for destruction all infringing utility knives, any copies, facsimiles or duplicates of same as well as all materials, catalogs, promotional materials and the like which otherwise embody or depict the infringing utility knife and trade dress and other materials constituting infringement of Great Neck's rights in Metro's possession, custody or control; and

9.     for such other and further relief as the Court may deem just and equitable.

Dated:   *October 12, 2007*

COLLARD & ROE, P.C.

Joseph J. Previto (JP7188)
Collard & Roe, P.C.
1077 Northern Boulevard
Roslyn, New York 11576
Tel: (516) 869-5950
Fax: (516) 365-9805
E-mail: joeprevito@collardroe.com
Attorneys for Plaintiff Great Neck Saw
Manufacturers, Inc.





Exhibit A

US007040022B2

(12) **United States Patent**     (10) Patent No.:     **US 7,040,022 B2**
Ping     (45) Date of Patent:     **May 9, 2006**

(54) **UTILITY KNIFE**

(75) Inventor: **Qiu Jian Ping**, Hangzhou (CN)

(73) Assignee: **Great Neck Saw Manufacturers, Inc.**, Mineola, NY (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 149 days.

(21) Appl. No.: **10/437,089**

(22) Filed: **May 13, 2003**

(65) **Prior Publication Data**

US 2004/0107580 A1     Jun. 10, 2004

(30) **Foreign Application Priority Data**

Dec. 10, 2002   (CN) .................................. 02 2 88379

(51) Int. Cl.
*B26B 1/04*     (2006.01)
(52) U.S. Cl. ............................. 30/161; 30/155; 30/329; 30/330
(58) Field of Classification Search .................. 30/155, 30/156, 157, 160, 161, 329, 330, 331, 332, 30/333, 337, 339, 340
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 97,154 | A | 11/1869 | Barnard |
| 493,075 | A | 3/1893 | Evertz |
| 515,045 | A | 2/1894 | Bultzingslowen |
| 584,077 | A | 6/1897 | Jackson |
| 596,096 | A | 12/1897 | Watts |
| 988,068 | A | 3/1911 | Beardsley |
| 1,362,142 | A | 12/1920 | Rohrer |
| 1,444,324 | A | 2/1923 | Brooks |
| 1,705,251 | A | 3/1929 | Perry |

| | | | |
|---|---|---|---|
| 1,750,577 | A | 3/1930 | DeBracht |
| 2,134,973 | A | 11/1938 | Harwell |
| 2,265,775 | A | 12/1941 | Mc Namara |
| 2,284,128 | A | 5/1942 | Bush |
| 2,523,757 | A | 9/1950 | Kassel |
| 2,914,850 | A | 12/1959 | Kuhnl |
| 2,980,996 | A | 4/1961 | Beran |
| 3,306,297 | A | 2/1967 | Voorhees |
| 3,568,315 | A | 3/1971 | Smith |
| 3,593,417 | A | 7/1971 | West |
| 3,872,591 | A | 3/1975 | Quenot |
| 4,017,969 | A | 4/1977 | Stonebraker |
| 4,040,181 | A | 8/1977 | Johnson |
| 4,261,104 | A | 4/1981 | Cuscovitch |
| 4,347,665 | A | 9/1982 | Glesser |
| 4,442,600 | A | 4/1984 | Felix-Salichow |
| 4,570,341 | A | 2/1986 | Konneker |
| 4,604,805 | A | 8/1986 | Krieger |
| 4,665,615 | A | 5/1987 | Martinez |
| 4,669,188 | A | 6/1987 | Evrell |

(Continued)

FOREIGN PATENT DOCUMENTS

WO      WO90086633     8/1990

*Primary Examiner*—Hwei-Siu Payer
(74) *Attorney, Agent, or Firm*—Joseph J. Previto

(57)     **ABSTRACT**

A utility knife having a handle and a blade holder which is pivotally mounted on the handle for movement from an unfolded position to a folded position. The handle has a space adapted to receive the blade holder when the blade holder is in its folded position. The blade holder includes a main wall and guard wall pivotally mounted on the main wall to pivot from an open position to a closed position overlying the main wall. The main wall being adapted to hold a blade so that a blade is interposed between the main wall and guard wall when the guard wall is in its closed position.

**31 Claims, 5 Drawing Sheets**



Exhibit B

US 7,040,022 B2

Page 2

| U.S. PATENT DOCUMENTS | | |
|---|---|---|
| 4,719,700 A | 1/1988 | Taylor, Jr. |
| 4,805,303 A | 2/1989 | Gibbs |
| 4,811,486 A | 3/1989 | Cunningham |
| 4,920,644 A | 5/1990 | La Gattuta |
| 4,936,014 A | 6/1990 | Shaanan et al. |
| 5,044,079 A | 9/1991 | Gibbs |
| 5,095,624 A | 3/1992 | Ennis |
| 5,125,157 A | 6/1992 | Howard |
| 5,400,509 A | 3/1995 | Collins |
| 5,511,310 A | 4/1996 | Sessions |
| 5,769,094 A | 6/1998 | Jenkins, Jr. |
| 5,815,927 A | 10/1998 | Collins |
| 5,826,340 A | 10/1998 | Hull |
| 5,909,930 A | 6/1999 | Ragland |

| | | | | |
|---|---|---|---|---|
| 5,966,816 A | 10/1999 | Roberson | | |
| 5,979,059 A | 11/1999 | Leatherman | | |
| 6,170,104 B1 | 1/2001 | Seber | | |
| 6,170,158 B1 | 1/2001 | Daily | | |
| 6,256,887 B1 | 7/2001 | Osborne | | |
| 6,256,888 B1 | 7/2001 | Shuen | | |
| 6,263,581 B1 | 7/2001 | Forte | | |
| 6,354,007 B1 | 3/2002 | Scarla | | |
| 6,370,778 B1 | 4/2002 | Conable | | |
| 6,446,341 B1 | 9/2002 | Wang | | |
| 6,487,740 B1 | 12/2002 | Seber | | |
| 6,574,868 B1 * | 6/2003 | Overholt | ...................... | 30/155 |
| 2002/0059730 A1 | 5/2002 | Flavigny | | |
| 2004/0226175 A1 * | 11/2004 | Ping | ........................... | 30/340 |

* cited by examiner

**U.S. Patent**      May 9, 2006      Sheet 1 of 5      US 7,040,022 B2



FIG.1



FIG.2

Case 2:07-cv-04265-TCP-ETB   Document 1-2   Filed 10/12/07   Page 27 of 34 PageID #: 69



FIG.3

FIG.4

FIG.5



FIG.6

FIG.7



FIG.8



FIG.9

**U.S. Patent**     May 9, 2006     Sheet 5 of 5     US 7,040,022 B2



FIG.10

FIG.11

US 7,040,022 B2

1

## UTILITY KNIFE

### BACKGROUND

The present invention relates to a utility knife and more particularly to a foldable utility knife in which the blade may be folded into the handle when the knife is not in use.

Utility knives have been used for a number of years. Some of the utility knives in use have blades that are mounted on a blade holder which is foldable within a handle when the knife is not in use. However, some of these utility knives have many movable parts which makes them difficult to use and expensive to manufacture. In addition, in some of these utility knives replacement of the blade is a complicated operation any may require special tools.

### OBJECTS

The present invention overcomes these problems and has for one its objects the provision of an improved utility knife in which the blade holder may be easily folded into a handle.

Another object of the present invention is the provision of an improved utility knife in which the blade is held securely on the utility knife.

Another object of the present invention is the provision of an improved utility knife in which improved means are provided for replacing the blade on the utility knife.

Another object of the present invention is the provision of an improved utility knife which is simple to use and inexpensive to manufacture and maintain.

Other and further objects of the invention will be obvious upon an understanding of the illustrative embodiment about to described, or will be indicated in the appended claims and various advantages not referred to herein will occur to one skilled in the art upon employment of the invention in practice.

### DRAWINGS

A preferred embodiment of the invention has been chosen for purposes of illustration and description and is shown in the accompanying drawings forming a part of the specification, wherein:

FIG. 1 is a perspective view of a utility knife made in accordance with the present invention.

FIG. 2 is a top plan view thereof

FIG. 3 is a sectional view taken along the line 3—3 of FIG. 1.

FIG. 4 is a sectional view similar to FIG. 3 showing the utility knife in a partially folded position.

FIG. 5 is a sectional view similar to FIG. 3 showing the utility knife in a fully folded position.

FIG. 6 is a plan view of one side of the utility knife showing the manner of removing and replacing the blade.

FIG. 7 is a plan view of the opposite side of the utility knife.

FIG. 8 is a perspective view of a modified version of the utility knife of the present invention.

FIG. 9 is a top plan view thereof.

FIG. 10 is a plan view of one side of the utility knife showing the manner of removing the blade.

FIG. 11 is a plan view of the other side of the knife.

2

### DESCRIPTION

Referring to the drawings and more particularly to the preferred embodiment of FIGS. 1 to 7, the utility knife 1 of the present invention comprises a handle 2 and a blade holder 3.

The handle 2 comprises a pair of handle halves 2A and 2B each having an outer side wall 11 an upper edge 7 and a lower edge 9. A rear spacer 4 is provided between the handle halves 2A and 2B to maintain the handle halves 2A and 2B separated and to create a space 5 between handle halves 2A and 2B. The spacers 4 and the handle halves 2A and 2B are held together by fasteners 6 which pass through the spacer 4 and the handle halves 2A and 2B in order to hold them together. The upper edge 7 of the handle halves 2A and 2B (i.e. the handle 2) has a finger notch 8 and a lower edge 9 of the handle halves 2A and 2B (i.e. the handle 2) may be undulated in order to permit the user's fingers to grip the handle 2. If desired, a clip 10 may be mounted on a side wall 11 of the handle halves 2A and/or 2B to permit the utility knife 1 to be fastened onto the user's belt or other convenient place.

Interposed between the handle halves at 2A and 2B and along the upper edges 7 of the handle halves 2A and 2B there is provided a lock lever assembly 15 (FIGS. 3 to 5) which is pivotally mounted between the handle halves 2A and 2B on a pivot pin 16 which extends through the two handle halves 2A and 2B and the lock lever assembly 15. The lock lever assembly 15 is a two arm lever having front and rear arms 17 and 18, respectively. The front arm 17 is provided with a downwardly extending lock finger 19. Below the rear arm 18 of the lock lever assembly 15 there is provided a spring 14 (which is v-shaped or u-shaped) which normally bears against the bottom edge of the rear arm 18 to force the rear arm 18 upwardly and the front arm 17 downwardly around the pivot 16 so that rear arm 18 protrudes above the notch 8. It will be seen that when the rear arm 18 of the lock lever assembly 15 is pressed down manually through the notch 8 against the action of spring 14, the front arm 17 will be raised.

The blade holder 3 of the present invention comprises a rear end 31 and a front end 32 which are integral with each other.

The rear end 31 of the blade holder 3 has rear edge 31A bottom edge 31B and upper edge 31C. The blade holder 3 is pivotally mounted in the space 5 between handle halves 2A and 2B on a pivot pin 30. A finger knob 41 may be provided on the rear end 31 to facilitate the pivotal movement of the blade holder 3 relative to the handle 2. The upper edge 31C of the rear end 31 has a groove 33 into which the downwardly extending lock finger 19 of the lock assembly 15 is adapted to enter when the blade holder 3 is in its extended or unfolded position.

The front end 32 of the blade holder 3 comprises a thin main wall 34 and a thin guard wall 35 pivotally mounted on the main wall 34 on pivot pin 36. The main wall 34 is adapted to hold a blade B which has a lower cutting edge 37 and spaced notches 38 in its upper edge 39. The main wall 34 has a pair of spaced protrusions 40 extending therefrom into which the upper notches 38 of the blade B are adapted to enter to hold the blade B in place on the main wall 34. It will be seen that when the guard wall 35 is in its closed raised position it covers and holds the blade B in place but when it is in its open downward position, it exposes blade B.

A blade lock assembly 45 is mounted along the top edge of the blade holder 3 and is pivotally mounted on the rear

3

end 31 of the blade holder 3 on pivot pin 46. The blade lock assembly 45 is in the form of a u-shaped clip having a segmented or interrupted top wall 48, a pair of side walls 49 depending for the top wall 48 and a front finger tab 50 extending forwardly therefrom. When the blade lock assembly or clip 45 is pivoted downwardly around pivot 46, its side walls 49 straddle the walls 34 and 35 of the blade holder 3 and its top wall 48 overlies the walls 34 and 35 as well as the blade B in order to lock te blade B in place. When it is desired to remove and replace the blade B, the clip 45 is pivoted upwardly by means of its finger tab 50 to release the walls 34–35 and the blade B. This permits the guard wall 35 to be pivoted away from the blade B (as shown in FIG. 6) in order to expose the blade B and permit the blade B to be removed and replaced.

In operation of the utility knife 1 shown in the preferred embodiment of FIGS. 1 to 7, the utility knife is placed in its operative unfolded position with the blade holder 3 unfolded and ready to be used. The blade B is held on the main wall 34 by protrusions 40 extending into notches 38 in the top edge 39 of the blade B. The lock finger 19 of the front arm 17 of the lock lever assembly 15 is in its lower position (because of the pressure of spring 14 on rear arm 18) and is positioned in the groove 33 in the blade holder 3 in order to hold the blade holder in its unfolded position.

When it is desired to place the utility knife 1 into its folded inoperative position, the rear arm 18 of the lock assembly 15 is pressed down manually through the notch 8 against the bias of the spring 14. This causes the front arm 17 of the lock assembly 15 to be raised thereby moving the lock finger 19 out of the groove 33 to release the blade holder 3 and permit it to pivot downwardly around the pivot pin 30 (FIG. 4). This may be accomplished by pushing down on the finger grip 41. The blade holder 3 is then pivoted down completely into the space 5 between the handle halves 2A and 2B (FIG. 5). When pressure on rear arm 18 is released, the spring 14 moves the rear arm 18 back to its original raised position by the tension of the spring 14. This causes the lock finger 19 to bear against the rear edge 31A and lower edge 31B of the blade holder 3 thereby holding the blade holder 3 in its folded position.

When it is desired to use the blade B the reverse procedure is followed. The blade holder 3 is pivoted in the opposite direction. It may be desirable for the rear arm 18 of the lock lever assembly 5 to again be depressed manually to assist in unfolding the blade holder 3. The blade holder 3 is continued to be rotated counter-clockwise (as seen in FIG. 4) until the lock finger 19 of the front arm 17 enters into the groove 33 in the rear end 31 of the blade holder 3 in order to hold the blade holder 3 in its extended position.

When it is desired to replace a blade B, the blade holder 3 is placed in its unfolded position (as shown in FIG. 6) and the clip 45 is lifted around pivot 46 by means of finger tab 50 thereby the releasing of guard wall 35 and permitting it to be pivoted downwardly around pivot 36 to expose the blade B. The blade B can then be moved out of the blade holder 3 and a new blade B can be placed therein. The guard wall 35 is again pivoted upwardly back into position over the blade B and the clip 45 is lowered to lock the blade B and the walls 34 and 35 in place.

Referring to its embodiment of the utility knife 1 shown in FIGS. 8–11, this embodiment is similar to the embodiment of the utility knife shown in FIGS. 1–7 and like parts will be identified with the same reference numerals.

In all respects the construction and operation of this embodiment is similar to the embodiment of FIGS. 1 to 7, however, in this embodiment, the pivotable guard wall 35 of

4

blade holder 3 is held in place by a threaded member 55 which extends through the pivotable guard wall 35 at opening 57 in the groove wall 35 into the main wall 34. When it is desired to remove the blade B, the threaded member 55 is removed and the guard wall 35 is pivoted downwardly around pivot 36 to expose the blade B which may then be removed and replaced. After replacing the blade B, the guard wall 35 is pivoted back up around its pivot 36 into its operative position over the blade B and the threaded member 55 may again be placed through the openings 57 and 56 to hold the guard wall 35 and the blade B in place.

It will be seen that the present invention provides a utility knife in which the blade holder may be easily folded into a handle in which improved means are provided for securing the blade on the utility knife and for replacing the blade on the knife and which is simple to use and inexpensive to manufacture and maintain.

As many and varied modifications of the subject matter of this invention will become apparent to those skilled in the art from the detailed description given hereinabove, it will be understood that the present invention is limited only as provided in the claims appended hereto.

The embodiments of the invention in which an exclusive property or privilege is claimed are defined as follows:

1. A utility knife comprising a handle and a blade holder, said blade holder being pivotally mounted on said handle for movement from an unfolded position to a folded position, said handle having a space adapted to receive at least a portion of said blade holder when the blade holder is in its folded position, said blade holder comprising a main wall and a guard wall pivotally mounted on said main wall for movement from an open position to a closed position overlying said main wall, said main wall having means to hold a blade thereon whereby the blade is interposed between said main wall and said guard wall when said guard wall is in its closed position, said blade holder comprises a rear end and a front end, said front end comprising said guard wall and said main wall, said rear end being pivotally mounted to said handle and having upper and bottom edges, said guard wall is pivotally mounted to said main wall on a pivot adjacent the bottom edge of said rear end, a blade lock assembly is mounted for pivotal movement relative to said main and guard walls from an open position to a closed position overlying the main wall and the guard wall.

2. A utility knife as set forth in claim 1 wherein said blade lock assembly is pivotally mounted on said rear end adjacent to said upper edge.

3. A utility knife as set forth in claim 2 wherein said blade lock assembly comprises a u-shaped clip having a top wall and a pair of side walls and wherein said side walls straddle said main wall and the guard wall when the clip is in its closed position.

4. A utility knife as set forth in claim 3 wherein said clip has a front finger tab extending therefrom.

5. A utility knife as set forth in claim 4 wherein said rear end has a finger knob extending therefrom.

6. A utility knife as set forth in claim 5 wherein said handle comprises a pair of spaced handle halves and wherein said handle has a pivoted lock lever assembly mounted in said handle and wherein said lock lever assembly has a front arm and a rear arm and a lock finger extending from the front arm.

7. A utility knife as set forth in claim 6 wherein said rear end of the blade holder has a groove therein adapted to receive said lock finger when the blade holder is in its unfolded position.

US 7,040,022 B2

5

8. A utility knife as set forth in claim 7 wherein spring means are mounted beneath the rear arm of the lock lever assembly to bias the rear arm upwardly and to bias the front arm downwardly to permit the lock finger to enter the groove, whereby depressing the rear arm against the tension of the spring means will cause the front arm to rise and the lock finger to move out of the groove permitting the blade holder to pivot relative to the handle from an unfolded position to a folded position into the space in the handle.

9. A utility knife as set forth in claim 8, wherein the handle has a notch in its top edge and wherein the rear arm protrudes above the notch whereby depression of the rear arm at the notch permits the front arm to be raised upwardly and cause the lock finger to move out of the groove.

10. A utility knife as set forth in claim 9, wherein the blade holding means comprise a pair of protrusions on the main wall of the blade holder, said protrusions being adapted to enter corresponding grooves in the blade.

11. A utility knife comprising a handle and a blade holder, said blade holder being pivotally mounted on said handle for movement from an unfolded position to a folded position, said handle having a space adapted to receive at least a portion of said blade holder when the blade holder is in its folded position, said blade holder comprising a main wall and a guard wall mounted on said main wall and movable from an open position to a closed position overlying said main wall, said main wall having means to hold a blade thereon whereby the blade is interposed between said main wall and said guard wall when said guard wall is in its closed position, said blade holder comprises a rear end and a front end, said front end comprising said guard wall and said main wall, said rear end being pivotally mounted to said handle and having upper and bottom edges, a blade lock assembly is mounted for pivotal movement relative to said main and guard walls from an open position to a closed position overlying the main wall and the guard wall).

12. A utility knife as set forth in claim 11 wherein said blade lock assembly is pivotally mounted on said rear end adjacent to said upper edge.

13. A utility knife as set forth in claim 12 wherein said blade lock assembly comprises a u-shaped clip having a top wall and a pair of side walls and wherein said side walls straddle said main wall and said guard wall when said clip is in its closed position.

14. A utility knife as set forth in claim 13 wherein said clip has a front finger extending therefrom.

15. A utility knife as set forth in claim 14 wherein said rear end has a finger knob extending therefrom.

16. A utility knife as set forth in claim 15 wherein said handle comprises a pair of spaced handle halves and wherein said handle has a pivoted lock lever assembly mounted in said space in the handle and wherein said lock lever assembly has a front arm and a rear arm and a lock finger extending from the front arm.

17. A utility knife as set forth in claim 16 wherein said rear end of the blade holder has a groove therein adapted to receive said lock finger when the blade holder is in its unfolded position.

18. A utility knife as set forth in claim 17 wherein spring means are mounted beneath the rear arm of the lock lever assembly to bias the rear arm upwardly and to bias the front arm downwardly to permit the lock finger to enter the groove, whereby depressing the rear arm against the tension of the spring means will cause the front arm to rise and the lock finger to move out of the groove permitting the blade holder to pivot relative to the handle from an unfolded position to a folded position into the space in the handle.

6

19. A utility knife as set forth in claim 18, wherein the handle has a notch in its top edge and wherein the rear arm protrudes above the notch whereby depression of the rear arm at the notch permits the front arm to be raised upwardly and cause the lock finger to move out of the groove.

20. A utility knife as set forth in claim 19, wherein the blade holding means comprise a pair of protrusions on the main wall of the blade holder, said protrusions being adapted to enter corresponding grooves in the blade.

21. A utility knife as set forth in claim 11, wherein said handle comprises a pair of spaced handle halves and wherein said handle has a pivoted lock lever assembly mounted in the said space in the handle and wherein said lock lever assembly has a front arm and a rear arm and a lock finger extending from the front arm.

22. A utility knife as set forth in claim 21 wherein said rear end of the blade holder has a groove therein adapted to receive said lock finger when the blade holder is in its unfolded position.

23. A utility knife as set forth in claim 22 wherein spring means are mounted beneath the rear arm of the lock lever assembly to bias the rear arm upwardly and to bias the front arm downwardly to permit the lock finger to enter the groove, whereby depressing the rear arm against the tension of the spring means will cause the front arm to rise and the lock finger to move out the groove permitting the blade holder to pivot relative to the handle from an unfolded position to a folded position into the space in the handle.

24. A utility knife as set forth in claim 23, wherein the handle has a notch in its top edge and wherein the rear arm protrudes above the notch whereby depression of the rear arm at the notch permits the front arm to be raised upwardly and cause the lock finger to move out of the groove.

25. A utility knife as set forth in claim 24, wherein the blade holding means comprise a pair of protrusions on the main wall of the blade holder, said protrusions being adapted to enter corresponding grooves in the blade.

26. A utility knife comprising a handle and a blade holder, said blade holder being pivotally mounted on said handle for movement from an unfolded position to a folded position, blade holding means on said blade holder for removably holding a blade on said blade holder, said blade holding means comprising blade lock means pivotally mounted on said blade holder, said blade holder comprising a rear end and a front end, said rear end being pivotally mounted to said handle and having upper and bottom edges, means for locking and unlocking said blade holder in said unfolded position whereby unlocking said blade holder permits said movement of said blade holder to a folded position, said handle having a space for receiving at least a portion of said blade holder when the blade holder is in its folded position, said means for locking and unlocking the blade holder comprising, said handle having a pivoted lock lever assembly mounted on said space in the handle, said lock lever assembly having a front arm and a rear arm and a lock finger extending from the front arm and said rear end of the blade holder having a groove therein adapted to receive said lock finger when the blade holder is in its unfolded position.

27. A utility knife as set forth in claim 26 wherein spring means are mounted beneath the rear arm of the lock lever assembly to bias the rear arm upwardly and to bias the front arm downwardly to permit the lock finger to enter the groove, whereby depressing the rear arm against the tension of the spring means will cause the front arm to rise and the lock finger to move out the groove permitting the blade holder to pivot relative to the handle from an unfolded position to a folded position into the space in the handle.

US 7,040,022 B2

7

28. A utility knife as set forth in claim 27 wherein the handle has a notch in its top edge and wherein the rear arm protrudes above the notch whereby depression of the rear arm at the notch permits the front arm to be raised upwardly and cause the lock finger to move out of the groove.

29. A utility knife as set forth in claim 28 wherein said handle comprises a pair of spaced handle halves to form said space in the handle and wherein said lock lever assembly is mounted in said space.

8

30. A utility knife as set forth in claim 29 wherein said blade holder comprises a pair of walls and wherein said blade holding means is adapted to removably hold a blade between said walls.

31. A utility knife as set forth in claim 30 wherein said blade holding means comprises a blade lock assembly mounted on said blade holder.

* * * * *